UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GARRISON,                        No. 08-10859

                    Plaintiff,           District Judge Lawrence P. Zatkoff

v.                                       Magistrate Judge R. Steven Whalen

TRANSUNION, ET AL.,

                    Defendants.
_____ /

## REPORT AND RECOMMENDATION

Before the Court is Defendant T-Mobile's Motion to Dismiss the Claims Against it or, in the Alternative, Stay Proceedings Pending Arbitration [Docket #34]. The motion is based on Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Pursuant to Fed.R.Civ.P. 10(c), Defendant AFNI has joined in this Motion  [Docket #39].  The Motion has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend that the Defendant's Motion be GRANTED, and the complaint DISMISSED as to Defendants T-Mobile.  However, I recommend that the Motion be DENIED as to Defendant AFNI.

## I.    FACTS

Plaintiff alleges that after receiving "a non-itemized telephone bill" from Defendant T-Mobile in the amount of $455.58, he wrote a letter to T-Mobile disputing the amount, and requested an itemized bill.  Complaint, Docket #1, ¶ 1.  He alleges that T-Mobile never responded to his request, but that on June 5, 2007, he received a letter from Defendant AFNI, a debt collection agency, demanding payment.  *Id.* ¶¶ 2-3.  Plaintiff claims that he requested validation of the debt from AFNI, but never received a response.

-1-

*Id.* ¶ 4. He brings claims against Defendant T-Mobile under the Fair Credit Billing Act, 15 U.S.C. § 1666(a) and (e) and the Michigan Consumer Protection Act, M.C.L. § 445.903 (Count I); and the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1) (Count VI of Amended Complaint, Docket #8). Plaintiff brings separate claims against Defendant AFNI under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e and the Michigan Debt Collection Practices Act, M.C.L. § 339.918(2) (Count II); the FDCPA, 15 U.S.C. § 1692g(5)(b) (Count III); and the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1) (Count VI of Amended Complaint, Docket #8).

Defendant T-Mobile moves to dismiss, or in the alternative, to stay the complaint, based on an arbitration clause in its contract with the Plaintiff. Attached to Defendant's motion [Docket #34] as Exhibit 3 is a copy of the "T-Mobile Terms and Conditions" provided to its customers, including Plaintiff. Paragraph 3 of that document states:

> 3. Mandatory Arbitration; Dispute Resolution. ANY CLAIM OR DISPUTE BETWEEN YOU AND US ARISING UNDER OR IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT AND/OR OUR PROVISION TO YOU OF GOODS, SERVICE OR UNITS SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") PURSUANT TO ITS PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES, INCORPORATED HEREIN BY THIS REFERENCE AND AVAILABLE BY CALLING THE AAA AT 800-778-7879 OR VISITING ITS WEBSITE AT http://www.adr.org.

Paragraph 2 of the Terms and Conditions states, in capital letters, "BY USING/ACTIVATING SERVICE WITH US YOU AGREE TO BE BOUND BY THE AGREEMENT." It further states, "If you do not agree to the terms of the Agreement, do not use the Service. Instead, cancel Service and return your Unit as provided in paragraph 18."

Defendant has also submitted, as Exhibit 4, the affidavit of Andrea M. Baca, a paralegal at T-Mobile. Ms. Baca states that "[a]s a general practice, T-Mobile inundates

customers with references to the Terms and Conditions when they receive their phones and upon activation." Baca Affidavit, ¶ 10. Specifically, there is a seal on the box for the telephone that states, in bold red letters, "**IMPORTANT - Read the enclosed T-Mobile Terms & Conditions. By using T-Mobile service, you agree to be bound by the Terms & Conditions, including the mandatory arbitration and early termination fee provisions.**" *Id.* ¶ 10(a). In addition, consumers receive a "Welcome Guide" booklet that includes and references the Terms and Conditions, *id.* ¶ 10(b); Rates & Coverage brochures that state, "Your use of the service constitutes acceptance of the T-Mobile Terms and Conditions, including mandatory arbitration, *id.* ¶ 10(c);" and a booklet entitled "Activating Your Service," which includes the Terms and Conditions, *id.* ¶ 10(d).

Ms. Baca states that Plaintiff opened one line of telephone service in a direct T-Mobile store on January 19, 2003. *Id.* ¶ 3. He made a total of $1,445.00 in payments toward the account, the last payment being made on September 3, 2003. Ms. Baca states that Plaintiff currently owes a balance of $455.58. His account was cancelled on or about October 21, 2003, and T-Mobile sent the account to a third-party collection agency, AFNI, to collect the outstanding debt. *Id*, ¶¶ 4-8.

In an affidavit attached to his response to T-Mobile's motion [Docket #42], Plaintiff states that he was never given the Terms and Conditions agreement, and was not aware of the mandatory arbitration requirement. Plaintiff's Affidavit, ¶ 2. He also states the he "never signed any contract or agreement, nor gave any mutual assent to any contract or agreement with Defendant T-Mobile agreeing to arbitrate any claims or disputes through binding arbitration rather than Court, nor would I have ever agreed to such a requirement." *Id.* ¶ 3. However, in his brief, at p.3, he clarifies that he does not dispute receiving the documentation referred to by Ms. Baca. Rather, he states that he did

not "specifically" consent to arbitration, and that acceptance of the Terms and Conditions, including the arbitration clause, would require his signature. *Id.*

## II.    STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. When a defendant challenges subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[1] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65

---

[1] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

(internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6ᵗʰ Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937,__L.Ed.2d__ (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[2] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. At 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950(Internal citations omitted).

## III.    DISCUSSION

### A.    Defendant T-Mobile

The question of whether arbitration is required is a question of law. *See Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). In answering this question, the Court must determine whether there is an

---

[2] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

agreement to arbitrate. *Mitsubishi Motors Corp. v. Slower Chrysler-Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The Federal Arbitration Act (FAA) mandates the compulsory arbitration of a dispute covered by a valid arbitration agreement. 9 U.S.C. § 2. Federal policy favors arbitration. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors, supra*, 473 U.S. at 626 (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S.1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In deciding whether to compel arbitration, the court asks two questions: (1) did the parties enter into a valid and enforceable agreement to arbitrate, and (2) do the claims asserted fall within the scope of the arbitration agreement. *Johns v. Sterling Jewelers, Inc.* 2006 WL 3759905, *1 (E.D.Mich.,2006), *citing AT & T Techs., Inc. v. Comms. Workers of Am .,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Plaintiff argues that he is not bound by T-Mobile's Terms and Conditions because he was never provided with a copy, was never made aware of their existence, and did not sign a copy.

Ms. Baca's affidavit shows that customers of T-Mobile are routinely and repeatedly advised, in writing, of the arbitration clause. The packaging of the mobile telephone contains that information in red, bold-face type. Any claim that the Plaintiff did not receive either the telephone in a box, the Welcome Guide, the Rates and Coverage Brochures or the activation booklet, all of which contain or reference the Terms and Conditions, is simply not plausible. Indeed, Plaintiff does not assert that he did not receive this material.

Rather, Plaintiff argues that because he did not sign the agreement, he is not bound

by it.  Plaintiff is wrong.  An arbitration agreement must be written (as it was in this case), but need not be signed.  In *Seawright v. American General Financial Services, Inc.*, 507 F.3d 967, 978 (6th Cir. 2007), an employee pamphlet contained language that "[s]eeking, accepting, or continuing employment with AGF means that you agree to resolve employment related claims against the company or another employee through this process instead of through the court system."  The Sixth Circuit held that the arbitration clause was enforceable even though it was not signed by the employee, and that the plaintiff's acceptance of employment constituted his assent to the agreement. *See also Ehresman v. Bultynck & Co., P.C.*, 203 Mich.App. 350, 354, 511 N.W.2d 724 (1994)("where mutuality of assent is established, written arbitration agreements do not have to be signed in order for the agreement to be binding"); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) (arbitration agreements contained in written documentation that is sent to the consumer after the initial sale are binding where the consumer assents to the agreement by use of the product).[3]

If he Plaintiff was unaware of the arbitration clause, it was because he, like many consumers, did not read the documentation, not because he did not receive it. "Competent adults are bound by such documents, read or unread." *Hill*, 105 F.3d at 1149.

---

[3] Plaintiff contends that ¶ 24 of the Terms and Conditions requires the customer's signature in order to be binding. To the contrary, ¶ 24, which reads as follows, requires no such thing:

> "24.  Signing Authority; Authorized User.  You acknowledge that you are of legal age, have received a true copy of the Agreement and have read and clearly understand the terms of the Agreement and, if activating on behalf of a corporation or other entity, are fully authorized to legally bind such entity.  You acknowledge that you are responsible for all charges incurred by any person you authorize to access your account, or to use you Unit or the Service."  As with all other terms and conditions, ¶ 24 is binding on customers by virtue of their use of the product.

Citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003), Plaintiff also seeks to avoid arbitration because he is incarcerated, and claims to have no access to the arbitration forum. But while *Morrison* states that "the arbitration of statutory claims must be accessible to potential litigants," it does not hold that the mere fact of incarceration precludes arbitration. Nor has Plaintiff cited any case that so holds. To the contrary, other courts have permitted arbitration to go forward where one of the parties was incarcerated. *See K. Lunsford v. RBS Dain Rauscher, Inc.*, 590 F.Supp.2d 1153, 1155 (D. Minn. 2008)(approving incarcerated party's telephonic participation in arbitration); *Fordjour v. Washington Mutual Bank*, 2008 W.L. 295092, *1 (N.D. Cal. 2008)(directing arbitration to proceed notwithstanding that plaintiff was incarcerated). Plaintiff can have access to the arbitration proceeding by telephone, video conferencing, and/or written submissions.[4]

Having established that Plaintiff is bound by an enforceable arbitration agreement,[5] the next question is whether his claims under the Fair Credit Billing Act, the Fair Credit Reporting Act, and the Michigan Consumer Protection Act fall within the scope of the

---

[4] Plaintiff claims that as a prison inmate, he does not have access to the toll-free numbers listed in the agreement. He has made no showing, however, that those are the numbers that would be used for an arbitration proceeding.

[5] Plaintiff has cited *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2008) in his supplemental authority [Docket #46]. In *Chalk*, the court found that a class-action waiver provision in the arbitration agreement was not procedurally unconscionable, but was substantively unconscionable. The court found that under Oregon law, an arbitration agreement that is either procedurally *or* substantively unconscionable is unenforceable. Further, the class action waiver was not severable under the arbitration agreement. The present case, however, would be controlled by Michigan law, which provides that an arbitration agreement is void only if it is *both* procedurally and substantively unconscionable. *See Pichey v. Ameritech Interactive Media Services, Inc.*, 421 F.Supp.2d 1038, 1044-45 (W.D. Mich. 2006). Moreover, this case does not involve a class action, and ¶ 21 of the Terms and Conditions provides for severability of any invalid provisions. Thus, *Chalk* is of no help to the Plaintiff.

agreement. They do. The unambiguous language of Paragraph 3 of the Terms and Conditions clearly provides that "*any* claim or dispute...arising under *or in any way related to or concerning* the agreement" (emphasis added) shall be submitted to arbitration. Any claim or dispute means any claim or dispute, and necessarily includes Plaintiff's statutory claims. "Even when claims arise pursuant to statutory rights, a court has a duty to enforce a valid arbitration agreement under the FAA." *Johns, supra* at *1; *Stout v. J.D. Bryider,* 228 F.3d 709, 715 (6th Cir.2001).

The final question is whether the Court should dismiss the complaint as to T-Mobile, or stay proceedings pending arbitration. Because all of the issues raised in this complaint are subject to arbitration, the appropriate remedy is dismissal. *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000), quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992)("'The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration'"); *Ozormoor v. T-Mobile USA, Inc.*, 2008 WL 5188772 (E.D. Mich. 2008)(collecting cases) ("[A] court may dismiss a case when all issues raised in the complaint are arbitrable").

## B.   Defendant AFNI

Defendant AFNI has joined in this motion, relying of Fed.R.Civ.P. 10(c). Under Rule 10(c), a defendant may join in a co-defendant's dispositive motion where there is no opposition to the motion to join, and where the legal issues and relevant facts are the same. *See Krause v. Buffalo and Erie County Workforce Development Consortium, Inc.*, 425 F.Supp.2d 352, 362-63 (W.D.N.Y. 2006).

Defendant T-Mobile must be dismissed based on the arbitration agreement. However, AFNI was not a party to that agreement, and has no separate arbitration

agreement with the Plaintiff.  The Plaintiff has independent statutory claims against AFNI in Counts II, III and VI that may be adjudicated without regard to his arbitration with T-Mobile.  Therefore, AFNI may not properly join in T-Mobile's motion under Rule 10(c). The motion should therefore be denied as to Defendant AFNI.

## IV.   CONCLUSION

For these reasons, I recommend that the Defendant's Motion to Dismiss [Docket #34] be GRANTED, and the complaint DISMISSED as to Defendant T-Mobile.  I further recommend that the Motion to Dismiss, as well as the Rule 10(c) joinder [Docket #39] be DENIED as to Defendant AFNI.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.  1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991);  *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue

contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  February 26, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 26, 2010.

S/Gina Wilson
Judicial Assistant
